## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

**TERESA WILLIAMSON,**

      **Plaintiff,**

**v.**　　　　　　　　　　　　　　　　**No. 1:15-CV-958 JCH/LF**

**METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,**

      **Defendant.**

## <u>MEMORANDUM OPINION AND ORDER</u>

This matter comes before the Court on (i) Defendant's Motion in Limine to Exclude Testimony of Plaintiff's Insurance Expert Ray Padilla (ECF No. 111), and (ii) Defendant's Motion in Limine to Limit Testimony of Plaintiff's Expert Brian Shelley, M.D. (ECF No. 112). The Court, having considered the motions, briefs, evidence, and applicable law, will grant in part and deny in part the motions in limine as described herein.

### I.　　FACTUAL BACKGROUND[1]

Ms. Williamson was involved in a car collision on April 27, 2012, and at the time, she was insured by Metropolitan Property and Casualty Company ("Metropolitan"), which provided uninsured/underinsured motorist ("UIM") coverage. After Plaintiff made a claim with Metropolitan for medical payments coverage ("MedPay"), Metropolitan required her to undergo an Independent Medical Examination ("IME") with Dr. Douglas Slaughter on October 18, 2013. Ms. Williamson reported to Dr. Slaughter that the day after the car collision she began experiencing neck and low back pains and that she had no back and neck pain symptoms prior to

---

[1] The facts of this case have been set forth extensively in the Memorandum Opinion and Order (ECF No. 142) filed by this Court on June 14, 2017. Except as otherwise cited, the following background facts are taken from the Court's prior opinion (ECF No. 142).

the April 2012 collision. Dr. Slaughter reviewed x-rays and a number of medical records, the first of which was dated May 9, 2012. Dr. Slaughter noted that he reviewed medical records from Plaintiff's visit to Dr. Emil Cheng on April 30, 2013 at New Mexico Orthopaedics for neck, mid back, and low back pain, in which Dr. Cheng had stated that Plaintiff reported having a history of right sciatica, she was involved in a motor vehicle accident in April 2012, she noticed pain in May 2012, and she was not sure if her symptoms were related to the accident.

After completing the IME, Dr. Slaughter reported, as relevant here, that Plaintiff had a pre-existing degenerative condition in her cervical and lumbar spine, and she "has had an exacerbation or a permanent aggravation of her cervical degeneration and lumbar degeneration" from the motor vehicle accident. Dr. Slaughter stated that, if Plaintiff has done relatively well from her single set of facet blocks, radiofrequency ablation may be beneficial to alleviate her pain for much longer periods of time, and that she "may be a good candidate for cervical facet blocks and radiofrequency ablation on a periodic basis." He noted that Plaintiff might benefit from further lumbar facet blocks and radiofrequency ablation for pain relief two to three times per year based on symptom reduction, as well as similar treatment in the cervical spine, two to three times per year as needed for pain relief.

Metropolitan subsequently paid Plaintiff $10,000 for medical payments pursuant to the MedPay benefits in the Policy. Plaintiff settled for $43,000 her third-party claim against the at-fault driver, who had an insurance policy limit of $50,000. Subsequently, on July 14, 2015, Thomas Mescall, counsel for Plaintiff, sent Metropolitan a letter notifying it of the settlement of her third-party claim and offering to settle her first party underinsured claim for $207,000. In the letter, Mr. Mescall stated that the $43,000 settlement barely covered Ms. Williamson's past medical expenses, and thus, failed to compensate her for past pain and suffering, future pain and

suffering and future medical payments. Counsel attached the IME Report and included copies of past medical bills, asserting that the total amount for past medical treatment was $37,125. In explaining the reasons behind the settlement offer, Mr. Mescall asserted that Dr. Slaughter recommended future medical treatment of cervical facet blocks and lumbar facet blocks, and Plaintiff had a cervical facet block at a cost of $3,893 and lumbar facet blocks ranging in cost from $4,132 to $9,967. Calculating two to three of each block per year for her life expectancy of over 30 years, Mr. Mescall stated her future medical costs would exceed the UIM policy limits.

Jacob Martinez, a Senior Claims Adjuster employed by Metropolitan, was assigned to Plaintiff's claim and reviewed Plaintiff's settlement demand letter, including the medical bills from May 9, 2012 through December 29, 2014. Metropolitan did not receive any additional medical records or bills about treatments from Plaintiff or her counsel during 2015. Metropolitan asserts it evaluated Plaintiff's claim to be approximately $50,000 to $56,000, relying on the assumption that Plaintiff had ended medical treatment in December 2014 and, therefore, it did not consider any future medical costs in the evaluation. By letter dated August 21, 2015, Mr. Martinez informed Mr. Mescall: "As discussed in our conversation of 08/21/2015, we offer a settlement offer of $1,000 for your client's bodily injury claim," without further written explanation justifying the amount. Metropolitan contends that it was a reasonable settlement, because it paid $10,000 in MedPay to Plaintiff, and she received $43,000 from the other driver.

Plaintiff disputes the reasonableness of the offer and filed suit against Metropolitan for breach of its insurance duties. Specifically, Plaintiff asserted claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, violation of New Mexico's Unfair Insurance Practices Act, and violation of the Unfair Practices Act. During discovery, Metropolitan discovered past medical records indicating that Plaintiff had back pain

and sciatica on and off for years before the accident. Metropolitan submitted additional information to Dr. Slaughter and asked him to prepare an affidavit.

On January 19, 2016, Dr. Slaughter signed an affidavit stating that in preparing his prior IME Report, he did not intend to imply that Ms. Williamson "required" three injections in either her cervical spine or lumbar spine per year. He explained that his IME was based on information Ms. Williamson provided him at the time; that she reported she had no symptoms in her back or neck prior to the car accident; and that his subsequent review of prior medical records for Plaintiff suggests that she did in fact have a long history of prior back and neck symptoms, dating at least to 2004. He noted the records indicate she has had mechanical symptoms in her low back with radiating pain in the right lower extremity intermittently and a history of neck pain, and that she had been treated with spinal injections in 2006 and 2011. Based upon his review of the additional information, he now believes she does not warrant any further treatment as a result of the April 2012 accident.

## A. Dr. Brian M. Shelley's Report and Deposition Testimony

Plaintiff subsequently retained Dr. Brian M. Shelley primarily to rebut Dr. Slaughter's affidavit. Dr. Shelley reviewed the IME Report, Dr. Slaughter's Affidavit, the medical records upon which Dr. Slaughter relied, and Dr. Cheng's April 30, 2013 medical record. Def.'s Ex. B, ECF No. 112-1 at 7 of 28. Dr. Shelley concluded that Plaintiff's medical records from July 6, 2004 through November 29, 2011 do not indicate that she received any spinal injections in 2011. He opined that, contrary to Dr. Slaughter's contention in his Affidavit, the records of prior care do not indicate that she had any neck pain or chronic neck pain prior to the motor vehicle crash. Dr. Shelley noted, however, that she reported back pain as far back as 2004 and mentioned back pain only once in her medical records from 2011. Dr. Shelley agreed that Ms. Williamson had

4

intermittent back pain for years, but noted that because Dr. Slaughter had Dr. Cheng's report of a history of sciatica, he had the information about back pain at the time of the evaluation. Dr. Shelley stated that Dr. Slaughter in his IME Report documented a physical exam that was negative for sciatica, indicating that he did not find any objective signs of sciatica on that date. Based on the records Dr. Slaughter reviewed, Dr. Shelley opined in his report that it is reasonable to conclude that Ms. Williamson's low back pain is worse than it was before the accident, and thus constitutes an aggravation. *See* Def.'s Ex B, ECF No. 112-1 at 8 of 28.

Dr. Shelley's report contains all the facts and data he considered, the opinions he would express, and the basis and reasons for them. Dep. of Dr. Shelley 14:24-15:9, ECF No. 112-1. Dr. Shelley's role in this case is limited: Dr. Slaughter rendered an opinion on causation, and Dr. Shelley was asked to analyze Dr. Slaughter's responses and different statements, including Dr. Slaughter's changed opinion regarding aggravation of a preexisting condition. *See id.* 34:8-14, 76:5-77:17. Dr. Shelley admitted he would want more information to give an opinion on whether the accident of April 27, 2012 caused Plaintiff's symptoms that she is complaining of today. *See id.* 34:8-38:16.

### B.  Ray Padilla's Report and Deposition Testimony

Plaintiff disclosed Ray Padilla, an insurance defense attorney, as an expert to testify on the value of her claim for underinsured benefits, to refute Metropolitan's valuation of only $50,000 to $55,000, and to explain what underinsurance is. Pl.'s Mot. for Extension 1, ECF No. 57. Plaintiff retained Mr. Padilla to testify that Metropolitan did not make Ms. Williamson a reasonable settlement offer. *See* Dep. of Ray Padilla 70:11-22, ECF No. 111-1.

Mr. Padilla has practiced law since 1975; from 1982 to 1997, he worked for a private practice law firm in which 70-75% of his work was representing insureds after an insurance

company hired him. *See* Dep. of Ray Padilla 8:16-22, 9:2-23, 10:12-20, ECF No. 111-1. Less

than 5% of his practice involved representing insurance companies in disputes with their

insureds. *Id.* 11:1-6. Since 1997, Mr. Padilla worked in his own private practice in which he

continued to represent insureds. *See id.* 11:7-17. Mr. Padilla could not recall if he had ever

represented an insurance company being sued by an insured for UIM benefits. *Id.* 12:4-8.

Although he has represented insureds in making claims for UIM, he has never had to sue an

insurance company for UIM benefits. *Id.* 12:9-14. Mr. Padilla has only once served as an expert.

*Id.* 13:3-10.

In preparing his report, Mr. Padilla reviewed Dr. Slaughter's IME Report, Metropolitan's

letter granting settlement consent for Plaintiff's bodily injury claim against the tortfeasor,

Plaintiff's settlement demand letter to Metropolitan, Metropolitan's settlement offer, the

Complaint, the Answer, Plaintiff's first motion for partial summary judgment (ECF. No. 9),

Metropolitan's response (ECF No. 118), and Plaintiff's reply (ECF No. 30). *See* Def.'s Ex. B,

ECF No. 111-1 at 16-17 of 23. Mr. Padilla also relied on New Mexico jury instructions and

background information verbally provided by Plaintiff's counsel. *Id.* Mr. Padilla did not review

any of Plaintiff's medical records from before or after the accident, other than the IME Report;

and he did not review the insurance policy, the claims file, Defendant's sur-reply concerning the

motion for summary judgment, or Dr. Slaughter's Affidavit. *See* Dep. of Ray Padilla 21:9-25,

54:11-56:24, 61:22-25, 64:7-14, 70:2-10, ECF No. 111-1. Mr. Padilla had two or three meetings

with Plaintiff's counsel prior to writing his report, *id.* 26:18-27:5, during which they told him

Ms. Williamson had a preexisting condition for which she was asymptomatic for several years

prior to the accident, *see id*. 29:20-31:10, 39:3-6, 40:5-13. Plaintiff's counsel told Mr. Padilla

that the claims file did not indicate any substantial investigation by the insurance company, but

Mr. Padilla did not examine the claims file or any copies of documents in it. *Id.* 64:7-14.

## II. STANDARD

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Fed. R. Evid. 702. A witness, qualified by knowledge, skill, experience, training, or education, may offer an opinion so long as the following conditions are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based upon sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

*Id.* Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, 2000 Amendments.

To determine whether an expert opinion is admissible, the district court performs the following two-step analysis: (1) the court must determine whether the expert is qualified by knowledge, skill, experience, training, or education to render an opinion, and (2) if the expert is so qualified, the court must determine whether the expert's opinion is reliable under the principles set forth in *Daubert*. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006). *Daubert*'s general holding setting forth the judge's gate-keeping obligation applies not only to testimony based on scientific knowledge, but also to testimony based on technical or other specialized knowledge. *Kumho Tire*, 526 U.S. at 141. Trial courts have equally broad discretion in both determining the reliability and admissibility of expert testimony and in deciding how to assess an expert's reliability, including what procedures to use in making that assessment. *United States v. Velarde*, 214 F.3d 1204, 1208-09 (10th Cir. 2000). So long as the

district court has enough evidence to perform its duty in assessing the relevance and reliability of an expert's proposed testimony, a hearing is not required. *See United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997).

In this case, neither party requested a pre-trial evidentiary hearing to assess the reliability of Dr. Shelley or Mr. Padilla's testimony. Instead, they submitted and relied principally on the expert reports and portions of deposition transcripts. In light of this record, the Court can rule on the motions without a formal hearing. *Cf. Ho v. Michelin North America, Inc.*, 520 F. App'x 658, 664 (10th Cir. Mar. 29, 2013) (unpublished) (concluding court permissibly exercised its discretion in ruling on *Daubert* motion without hearing where it had before it several expert reports, expert deposition transcripts, and other evidence to accompany parties' arguments).

## III.    ANALYSIS

An insurer has a duty to act fairly and in good faith when attempting to settle a UIM claim with its insured under the policy. *Hendren v. Allstate Ins. Co.*, 1983-NMCA-129, ¶ 20, 672 P.2d 1137. An insurer acts in bad faith when it refuses to pay a claim for frivolous or unfounded reasons, in other words, when the refusal was arbitrary or baseless, lacking any support in the wording of the insurance policy or circumstances surrounding the claim. *See Sloan v. State Farm Mut. Auto. Ins. Co.*, 2004-NMSC-004, ¶ 18, 85 P.3d 230; NM UJI 13-1702. "In deciding whether to pay a claim, the insurance company must act reasonably under the circumstances to conduct a timely and fair [investigation or evaluation] of the claim." NM UJI 13-1702. In failure-to-pay claims, a plaintiff must show that an insurer acted unreasonably in denying or delaying a claim. *Sloan*, 2004-NMSC-004, ¶ 19. If the insurer has reasonable grounds for denying a claim under the terms of the policy, an insurer is not liable for bad faith. *Progressive Cas. Inc. Co. v. Vigil*, 2015-NMCA-031, ¶ 14, 345 P.3d 1096 (quoting NM UJI 13-1702), *cert. granted by* 346

P.3d 1163 (2015). When payment depends on a factual or legal issue that is fairly debatable, the insurer is entitled to debate the issue. *Id.*

### A. Ray Padilla

Defendant argues that Ray Padilla is not qualified in the specific areas of New Mexico UIM law and insurance bad faith law. Defendant also argues Mr. Padilla's opinions are unreliable and unhelpful because they are speculative and premised upon erroneous factual assumptions. Defendant asserts that Mr. Padilla's ultimate opinion that the settlement offer was unreasonable was based on six rationales, which each are premised upon baseless speculations.

### 1. Qualifications

Although his practice involved only about 5% UIM claims, the Court finds that Mr. Padilla's extensive experience over the course of 25 years representing insureds renders him qualified as an expert in the customs and practices of the insurance industry in New Mexico, including the practice and law pertaining to UIM claims and bad faith.

### 2. Reliability

Where an expert witness's testimony is based on his experience, the expert witness must explain how his experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts. *United States v. Nacchio*, 555 F.3d 1234, 1258 (10th Cir. 2009). Examining the rationales for his opinion that Metropolitan did not make a reasonable settlement offer, Mr. Padilla stated in his report that it appeared Metropolitan wanted to lump two separate and distinct types of insurance coverage together, but he noted that he "will need to carefully review the applicable insurance policy to be more specific on this point." Def.'s Ex. B, ECF No. 111-1 at 18 of 23. Mr. Padilla admitted in his deposition, however, that he had not reviewed the terms of the policy at the time he wrote his

9

report. Based on Mr. Padilla's own reasoning, the Court finds he does not have sufficient facts to support this rationale.

Mr. Padilla also opined in his report that if Defendant had questions as to the viability of Plaintiff's claims and demand, it should have asked more questions and investigated further. Mr. Padilla admitted in his deposition that he never examined the claims file or copies of documents therein, so he did not know the specifics of the investigation done at the time Metropolitan made its settlement offer. *See* Dep. of Ray Padilla 64:7-14, ECF No. 111-1. Instead, Mr. Padilla relied on the one-sentence settlement letter and the statements of Plaintiff's counsel that the claims file did not indicate any substantial investigation. *See* Dep. of Mr. Padilla 64:7-14, 65:7-11, ECF No. 111-1. Mr. Padilla's reliance on conclusory assumptions without specific supporting facts does not establish a reliable basis to support his opinion. *See Kitto v. Farmers Ins. Co., Inc.*, 39 F.3d 1192, at *3 (10th Cir. Nov. 14, 1994) (unpublished) (noting that expert's unsupported assumption is conclusory assertion that cannot create genuine dispute about underlying facts). Nor has Plaintiff established that the limited documents Mr. Padilla reviewed are what are customary in the field of insurance to review to determine a reasonable settlement offer. Although Mr. Padilla is qualified to testify about what kinds of investigations insurance companies typically do in cases like this one, Plaintiff has not demonstrated he has an adequate factual foundation to assess whether Metropolitan did a sufficient investigation in this case.

Plaintiff seeks also to admit Mr. Padilla's testimony that he would value Plaintiff's claim, at the low end, at least at policy limits; at the mid-level range, in the mid to high six figures; and at the high end, in the seven-figure plus range. Plaintiff has not met her burden to show that Mr. Padilla used a reliable methodology to set a dollar range for the amount of her damages. Mr. Padilla acknowledged in his deposition that, to determine the damages of an injured plaintiff, the

insurer has to look into and investigate whether the plaintiff had a preexisting condition and whether it was aggravated by the accident. *See* Dep. of Ray Padilla 18:7-14, ECF No. 111-1. In rendering his opinion that the value of Plaintiff's damages exceeded the amount offered by Metropolitan, Mr. Padilla relied on the IME Report, Plaintiff's demand letter, and the approximately $37,000 in past medical bills, not on the claims file that would show what documents and investigation Metropolitan actually had completed at the time. *See id.* 21:9-25, 58:16-25, 60:8-16. Based on this record, the Court finds that Mr. Padilla's testimony concerning the value of Plaintiff's personal injury claim is not based on a reliable methodology tied to his experience.

Additionally, Mr. Padilla acknowledged he was not qualified to render medical opinions. Plaintiff intends to prove the alleged $240,750 in future medical costs, as stated in the demand letter, through Ms. Williamson's testimony about how much the injections cost and hospital staff testimony that the costs are reasonable. Plaintiff has not met her burden of showing that Mr. Padilla's testimony on the value of the claim would assist the trier of fact because the jury itself is capable of assessing the value of the claim based on the evidence. *See Thompson v. State Farm Fire and Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994) (affirming exclusion of testimony of bad faith expert because jury was capable of assessing issues for itself).

Plaintiff nevertheless argues that Mr. Padilla's experience qualifies him to testify as to the standards and customs in the insurance industry in New Mexico. The Court agrees that Mr. Padilla is qualified to testify concerning what underinsurance is and the standards insurance companies in New Mexico follow when reviewing UIM claims of their insureds; that this information is not generally known by lay persons; and thus, that the testimony would assist the jury. *See* NM UJI 13-1705 (stating that evidence of what is customarily done by those engaged

11

in the insurance industry is evidence of whether the insurance company acted in good faith). Mr. Padilla opined in his report that Metropolitan's one line offer of $1,000 in the settlement letter lacks the detail and explanation he would expect based on his years of experience defending insurance companies. Relying on his experience that an insurance adjuster would typically write more than a one-sentence letter explaining the rationalization behind a $1,000 figure, Mr. Padilla stated that it made no sense to admit coverage, but attempt to avoid liability, without a full explanation. *See* Dep. of Ray Padilla 67:12-25, ECF No. 111-1. Defendant argues that the opinion is lacking in foundation because Mr. Padilla is not aware if Jacob Martinez gave additional verbal reasons in support of his offer, *see id.* 44:7-45:2. Mr. Padilla's lack of knowledge of whether Mr. Martinez verbally gave additional reasons, however, goes to the weight, not the admissibility, of his opinion regarding the deficiencies of the letter.

For all the foregoing reasons, the Court will permit Mr. Padilla to testify as to his opinion concerning what information Metropolitan should have provided in its letter containing the settlement offer based on insurance standards and customs, and how Metropolitan's one-line settlement letter lacks the detail and explanation he would expect based on his experience. Mr. Padilla will not be permitted to offer other opinions set forth in his report because Plaintiff has not met her burden to show they are based on reliable facts and methodology under *Daubert*. Most significantly, Mr. Padilla will not be permitted to testify that Metropolitan did not conduct a reasonable investigation or that $1,000 was not a reasonable settlement offer.

### B. Dr. Brian Shelley

Defendant does not challenge the qualifications of Dr. Shelley. Defendant instead argues that Dr. Shelley's opinion, to the extent he opines that Plaintiff had an aggravation of a pre-existing spinal degenerative condition caused by the April 2012 accident, is not reliable because

it was based on only one post-accident medical record and Dr. Shelley did not review hundreds of pages of medical records and other relevant information.

In response, Plaintiff argues she retained Dr. Shelley to analyze and explain Dr. Slaughter's IME Report and to compare it with his subsequent affidavit. Plaintiff asserts that Dr. Shelley's relevant opinion, among others, is that he "respectfully disagrees with Dr. Slaughter's Affidavit, in which he changes his assessment of Ms. Williamson's condition from 'aggravation' to 'exacerbation.'" Pl.'s Resp. 3 (quoting Dr. Shelley's Report at 5-6, ECF No. 56-1 at 6-7 of 12), ECF No. 118. Plaintiff asserts that the relevance of Dr. Shelley's expert testimony "is that it discredits the conclusions in Dr. Slaughter's affidavit – thereby validating the conclusions in Dr. Slaughter's original expert report." *Id.* at 4. Plaintiff, in response to a separate motion, indicates her intent to use Dr. Shelley "to proffer a medical opinion as to Plaintiff's underlying pre-existing condition." Pl.'s Resp. 13, ECF No. 117.

In his report, Dr. Shelley explains the basis for his conclusion that Ms. Williamson had an aggravation of her low back pain due to the motor vehicle accident, relying on pre-accident medical records that contrasted with her symptoms characterized by Dr. Slaughter in his IME Report. Dr. Shelley explained that his opinion was based on the intermittent reporting of back pain pre-accident; the increased severity of Ms. Williamson's condition as of the date of the IME with Dr. Slaughter; her use of ibuprofen pre-accident to manage her symptoms; and Dr. Slaughter's post-accident recommendation of possible radiofrequency ablation for the facet component of her pain, reinforcing the notion that she needed more intensive treatment post-accident. *See* Def.'s Ex. B, ECF No. 112-1 at 9-10 of 28. Although Dr. Shelley stated that he was not directly asked to render an opinion on causation, Dr. Slaughter made such an opinion and Dr. Shelley was asked to respond to that opinion. *See* Dep. of Dr. Shelley 34:8-14, ECF No. 112-1.

The Court finds that Plaintiff met her burden under *Daubert* of showing that Dr. Shelley has specialized medical knowledge, that he based his opinion on sufficient facts and data, and that he reliably applied the facts contained in the medical records he reviewed to arrive at his opinion that Ms. Williamson had an aggravation of her low back pain due to the motor vehicle accident. Dr. Shelley's conclusion is based on more than mere conjecture or speculation. Dr. Shelley's opinion would be helpful to the jury in assessing whether Metropolitan acted reasonably in its consideration of Dr. Slaughter's findings in the IME Report in making its settlement offer. Consequently, the Court finds that Plaintiff has met the threshold burden of reliability to permit Dr. Shelley to testify whether Dr. Slaughter's opinions and statements set forth in his IME Report and his Affidavit, respectively, are supported by the records upon which Dr. Slaughter relied to make them.

Defendant contends that Dr. Shelley testified that he does not have enough information to form an opinion regarding any causal connection between the accident and Plaintiff's alleged current symptoms, relying on a select portion of Dr. Shelley's deposition testimony. *See* Dep. of Dr. Shelley 34:8-38:16, ECF No. 112-1. Defense counsel asked Dr. Shelley if he had enough information to opine as to the causal connection between the accident "and the symptoms that she's complaining of *today*." *Id.* 36:17-21 (emphasis added). Dr. Shelley responded, "I would like more information," noting that from what he has read and seen, Plaintiff is much more symptomatic and requiring more medical treatment. *Id.* 36:22-37:4. Plaintiff acknowledges in her response that Dr. Shelley did not review all Plaintiff's medical records, because Dr. Shelley "was not retained to render a second opinion on causation; instead Dr. Shelley simply endorses Dr. Slaughter's original opinion on causation based on the extensive analysis in Dr. Slaughter's original expert report." Pl.'s Resp. 4, ECF No. 118. Consequently, Plaintiff appears to concede

14

that she has not shown that Dr. Shelley could testify concerning the causal connection between the accident and her current symptoms. The Court will therefore not permit Dr. Shelley to render such opinions at trial.

The Court nonetheless finds based on the record before it that Dr. Shelley's opinion is sufficiently reliable to present to a jury to the extent it is limited to the conclusion that the medical records reviewed by Dr. Slaughter support the finding that Ms. Williamson sustained an aggravation of her low back pain due to the motor vehicle accident. The Court recognizes that Dr. Shelley did not review all of the post-accident medical records of Ms. Williamson and lacked other information, such as the speed of impact of the vehicles. Such facts provide fertile grounds for cross-examination at trial, but go to the weight, not the admissibility, of Dr. Shelley's testimony.

**IT IS THEREFORE ORDERED** that

1. Defendant's Motion in Limine to Exclude Testimony of Plaintiff's Insurance Expert Ray Padilla (**ECF No. 111**) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.  Defendant's request is **DENIED** to the extent it seeks to exclude Ray Padilla from testifying regarding what underinsurance is, his opinion concerning what information Metropolitan should have provided in its letter containing the settlement offer based on insurance standards and customs, and how Metropolitan's one-line settlement letter lacks the detail and explanation he would expect based on his experience.

    b. Defendant's request to exclude the opinion testimony of Mr. Padilla is otherwise **GRANTED**.

2.  Defendant's Motion in Limine to Limit Testimony of Plaintiff's Expert Brian Shelley, M.D. (**ECF No. 112**) is **GRANTED IN PART AND DENIED IN PART** as follows:

    a.  Defendant's request to exclude Dr. Shelley from giving an opinion on a causal connection between the April 27, 2012 accident and Plaintiff's alleged symptoms *today* is **GRANTED**.

    b.  Defendant's motion in limine is otherwise **DENIED**.

<br>

                                                 _____

**UNITED STATES DISTRICT JUDGE**