# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW MEXICO

TERESA WILLIAMSON,

      Plaintiff

v.                                         No. 1:15-CV-958 JCH/LF

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

      Defendant.

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the following motions filed by Plaintiff: (1) First Motion in Limine to Exclude *Post Hoc* Medical Testimony (ECF No. 165); (2) Second Motion in Limine to Exclude Pre-Accident Medical Records (ECF No. 166); (3) Third Motion in Limine to Exclude Evidence of Previous Litigation (ECF No. 167); and (4) Fourth Motion in Limine to Exclude Evidence of Collateral Source Payments (ECF No. 169). The Court, having considered the motions, briefs, evidence, relevant law, and otherwise being fully advised, will deny the first, second, and third motions in limine, and will grant the fourth motion in limine.

    **I.**     **First Motion in Limine to Exclude *Post Hoc* Medical Testimony**

Plaintiff argues that in bad faith cases the reasonableness of Metropolitan's decision to offer Plaintiff only $1,000 for her claim must be based on the information it had at the time it made its decision, and thus, medical testimony subsequently acquired, particularly in 2016 from Dr. Davis and Dr. Hermes, is irrelevant and inadmissible. Plaintiff asserts that Metropolitan cannot use their testimony to retroactively justify its decision to offer Plaintiff only $1,000 in settlement of her claim. Dr. Davis is a medical expert for Metropolitan and Dr. Hermes was one of Plaintiff's treating physicians.

Defendant notes that Plaintiff is correct that in bad faith cases the inquiry into reasonableness is evaluated under the circumstances at the time, but contends that the testimony of Dr. Davis and Dr. Hermes is nevertheless relevant to Plaintiff's breach of contract claim in Count I for failure to provide underinsured motorist ("UIM") coverage, Metropolitan's affirmative defense of fraud, and damages. The Court finds that the testimony of Dr. Davis and Dr. Hermes may be admissible for purposes other than the reasonableness of Metropolitan's decision, and therefore, will deny Plaintiff's first motion in limine. *See, e.g., Aragon v. Allstate Insurance Co.*, 185 F.Supp.3d 1281, 1287 (D.N.M. 2016) ("To recover UIM benefits, Aragon must prove the elements necessary for any negligence claim: duty, breach of duty, and causation, and also damages that exceed the limits of the tortfeasor's policy."). The Court will evaluate the admissibility of the testimony in the context of the presentation of evidence. *See Indiana Ins. Co. v. General Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004) ("Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded.").

**II.     Second Motion in Limine to Exclude Pre-Accident Medical Records**

Plaintiff argues evidence of her pre-accident medical records is not admissible because she was asymptomatic at the time of the accident. Defendant disputes that she was asymptomatic and asserts that this Court already ruled that the pre-accident medical records are relevant to its affirmative defense of breach of the insurance contract by fraud. Defendant additionally argues that the records are relevant to Plaintiff's case, which is based on the aggravation of a pre-existing condition. Defendant contends that Plaintiff's new expert, Dr. Grace, will testify that the April 2012 accident caused an aggravation to Plaintiff's pre-existing condition, and thus, the pre-

accident medical records are relevant to establishing that the pre-existing condition existed in the first place. The Court concludes that the pre-accident medical records are generally relevant and may well be admissible as to one or more of the grounds highlighted by Defendant. The Court will therefore deny the second motion in limine, subject to renewal at trial for objections to specific medical records, which the Court will decide in the context of the presentation of evidence.

### III. Third Motion in Limine to Exclude Evidence of Previous Litigation

Plaintiff seeks to exclude evidence regarding the litigation over the underlying car collision against the tortfeasor. Specifically, Plaintiff seeks to exclude (i) any testimony from Jerry McClellan, the tortfeasor in the car accident, and his defense lawyer Lance Richards; (ii) statements that Plaintiff made to Mr. McClellan's insurance carrier and defense lawyer; (iii) communications between Thomas Mescall, Plaintiff's lawyer, and Mr. Richards regarding settlement negotiations; and (iv) medical records about which Metropolitan questioned Mr. Richards in his deposition. Plaintiff argues the previous litigation is not relevant to Defendant's decision to offer $1,000 in settlement or to the defense that Ms. Williamson deceived Metropolitan.

Defendant asserts that the evidence from the underlying litigation is relevant to Plaintiff's UIM claim, as one of the elements is that the tortfeasor, Mr. McClellan, caused Plaintiff's damages and that the damages are in excess of his policy limits. Defendant further argues that evidence of communications between Plaintiff's counsel and Mr. McClellan's defense lawyer is relevant to Metropolitan's affirmative defense of policyholder dishonesty. For example, Defendant contends that Mr. Richards' testimony will show Plaintiff's counsel was in possession of voluminous prior medical records contradicting Mr. Mescall's assertion in his demand letter

that Plaintiff was asymptomatic at the time of the accident.

Plaintiff's arguments pertain to her bad faith claim, but Plaintiff also has a claim in Count I for breach of contract arising from failure to provide underinsured coverage. *See* Compl. 4, ECF No. 1-2. The Court will deny Plaintiff's third motion in limine because Metropolitan has established the possible relevance of the evidence from the previous litigation as to either Count I and/or to Metropolitan's affirmative defense. The Court, however, will determine any objections to the admissibility of specific evidence arising from the previous litigation in the context of the trial and the presentation of the evidence.

**IV.     Fourth Motion in Limine to Exclude Evidence of Collateral Source Payments**

In the Pretrial Order submitted by the parties, Defendant listed as a contested issue of law: "To the extent Plaintiff's medical bills are admitted, whether the proper measure of damages for medical expenses are what has been paid to each provider in full and final satisfaction of the medical expenses." Proposed Pretrial Order 7. Plaintiff argues that this issue has been conclusively decided by New Mexico courts, which have held that the appropriate measure of medical expenses is the amount billed by medical service providers, not the discounted amounts accepted as payment from the health insurer. Plaintiff thus asserts that Defendant should be prohibited from commenting or offering evidence to establish that the appropriate measure of medical expenses incurred by Plaintiff is the amount actually paid.

Defendant asserts that there is a split in authority on whether evidence of write-offs should be excluded from trial under the collateral source rule. Defendant argues that medical providers routinely inflate invoices, knowing that insurers will pay reduced amounts, so the best evidence of the "reasonable expense" of medical services is the amount the medical provider agrees to accept from someone as full payment. Defendant therefore requests the Court

determine as a matter of law that the reasonable value of medical services is the amount paid and accepted by the healthcare provider, or alternatively, the Court allow all relevant evidence concerning the practices of medical practitioners in submitting inflated invoices with the expectation those invoices will be reduced, including evidence of the write-off amounts.

The collateral source rule provides that payments made to or benefits conferred on an injured party from a collateral source are not credited against the tortfeasor's liability. *Prager v. Campbell County Mem. Hosp.*, 731 F.3d 1046, 1058-59 (10th Cir. 2013). *See also Selgado v. Commercial Warehouse Co.*, 1974-NMCA-093, ¶ 14, 526 P.2d 430 (stating that New Mexico's collateral source rule is that "[c]ompensation received from a collateral source does not operate to reduce damages recoverable from a wrongdoer"). "A plaintiff may recover medical expenses and lost wages incurred by a defendant's negligence, even though plaintiff may have had such items paid for by insurance or otherwise," and such a payment "should not diminish the amount of damages recovered" by a plaintiff in an action based on the defendant's negligence. *Bailey v. Jeffries-Eaves, Inc.*, 1966-NMSC-094, ¶ 45, 414 P.2d 503. The rule allows a plaintiff to recover more than the damages suffered from the injury, because as a matter of policy, the wrongdoer should not enjoy reduced liability because the plaintiff received compensation from an independent source. *Prager*, 731 F.3d at 1059.

The "collateral source rule is an exception to the rule against double recovery." *Sunnyland Farms, Inc. v. Central New Mexico Elec. Co-op., Inc.*, 2013-NMSC-017, ¶ 48, 301 P.3d 387. Although one justification for the rule is that it gives a plaintiff the means to reimburse the collateral source, *see id.* ¶ 49, the New Mexico Supreme Court gave further explanation for why the exception exists even if full reimbursement is not sought:

> If the third party or collateral source does *not* seek compensation, its contribution could benefit either the defendant, by reducing the damages that the defendant

must pay, or the plaintiff, by allowing the plaintiff to recover twice. In New Mexico, the collateral source rule dictates that the contribution of a collateral source must operate to benefit the plaintiff rather than the defendant. "'Whether [the collateral contribution] is a gift or the product of a contract of employment or of insurance, the purposes of the parties to it are obviously better served and the interests of society are likely to be better served if the injured person is benefitted than if the wrongdoer is benefitted.'"

*Id.* ¶ 50 (quoting *McConal Aviation, Inc. v. Commercial Aviation Ins. Co.*, 110 N.M. 697, 700, 799 P.2d 133, 136 (1990)). *See also McConnell v. Wal-Mart Stores, Inc.*, 995 F.Supp.2d 1164, 1169 (D. Nev. 2014) ("If a victim can remedy his harm at a 'bargain' rate, the 'windfall' represented by the difference belongs to the victim, not to the tortfeasor."). The New Mexico Supreme Court additionally noted that "'double recovery'" is likely to be more egregious in theory than in practice; in reality, plaintiffs rarely receive their full damages, since they must pay attorney fees out of their damages," and thus allowing a collateral source's benefit to inure to the injured party, rather than the tortfeasor, makes it more likely that the plaintiff will be fully compensated. *Sunnyland Farms*, 2013-NMSC-017, ¶ 50.

The Tenth Circuit has held that hospital defendants, tortfeasors in a medical malpractice case, could not receive the benefit stemming from discounts or write-offs of reduced medical bills that came as a direct result of negotiations between the plaintiff's medical providers and Workers' Compensation. *See Prager*, 731 F.3d at 1058-59. In *Prager*, the hospital defendants argued that the district erred in excluding evidence of payments made by Wyoming Workers' Compensation to the plaintiff's medical-care providers. *Id.* They asserted that the evidence of discounts or write-offs is a more accurate reflection of medical expenses that the jury should consider when determining the reasonableness of the plaintiff's damages. *See id.* They contended that evidence of write-offs should not fall under the collateral-source rule. *Id.* at 1059. The Tenth Circuit disagreed, concluding that the payments squarely fell within the collateral source rule. *Id.*

The *Prager* court reasoned that to limit the plaintiff's damages to the amount paid by Workers' Compensation "would confer an unintended and inappropriate benefit on the Hospital Defendants," because the write-offs reflect the negotiating power of the plaintiff's insurer, an independent source, in requiring providers to take discounted reimbursement. *Id.* Consequently, it held that the district court did not abuse its discretion in excluding evidence of the Workers' Compensation payments. *Id.*

The parties here agree that New Mexico appellate courts have yet to address whether the collateral source rule bars evidence of the amount the Plaintiff's medical provider wrote off of the medical bills pursuant to an agreement with Plaintiff's health insurer. Permitting only evidence of the amount of medical services paid and accepted by the healthcare provider, as Defendant requests, would effectively reduce the damages recoverable from the tortfeasor based on a benefit received from a collateral source. Plaintiff paid premiums for UIM coverage, which is intended to place her in the same position she would have been in if the tortfeasor had carried the same liability coverage, and thus, the rule should equally apply in this case. *Cf. Lomax v. Nationwide Mutual Ins. Co.*, 964 F.2d 1343, 1346-47 (3d Cir. 1992) (applying Delaware law in holding that collateral source rule applied to action to recover uninsured motorist benefits). *See also McCarty v. Liberty Mutual Ins. Co.*, No. 15-CV-210-R, 2017 WL 676459, at *5 (D. Wyo. Feb. 3, 2017) (unpublished) ("the majority of state supreme courts that have squarely addressed the issue have applied the collateral source rule when determining coverage under UI/UIM policies") (and cited cases).

The policy reasons behind the collateral source doctrine compel the conclusion that the evidence of the write-offs should be excluded so as to safeguard the collateral source doctrine and avoid jury confusion on the issue of reasonableness of the medical expenses. Having

7

considered New Mexico law on the collateral source rule generally, and the authority from the Tenth Circuit and other courts, this Court concludes that the New Mexico appellate courts are likely to apply the collateral source rule to the situation here and would exclude evidence of the amount Plaintiff's medical provider wrote off pursuant to an agreement with Plaintiff's health insurer. *Cf. Felts v. Board of County Commissioners of Valencia County*, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *5 (D.N.M. July 31, 2017) (holding that "jury's determination of the reasonable value of Plaintiff's health care expenses should be based on a presentation of the amount billed, rather than the amount paid by Medicaid on Plaintiff's behalf"); *Pipkins v. TA Operating Corp.*, 466 F.Supp.2d 1255, 1261 (D.N.M. 2006) ("New Mexico's recognition of the collateral source rule and development of that rule suggests that New Mexico courts would characterize the write off amount as a benefit or contribution received by the plaintiff from a source collateral to the tortfeasor.").

> As the district court in *McConnell v. Wal-Mart Stores, Inc.*, explained:
>
> The collateral source rule has always been controversial, but it is not for this Court to create exceptions to it, and the Court estimates that the Nevada Supreme Court would not create an exception here, anyway. Defendant may attempt to prove at trial that the amounts billed by Plaintiff's medical providers were unreasonable in-and-of-themselves—assuming Defendant has experts to provide such testimony—but Defendant may not under the collateral source rule argue that any amount written down is necessarily unreasonable by the very fact that the amount was written down. Again, the rule recognizes that a tort victim may receive a "windfall," but that windfall belongs to the victim, not to the tortfeasor. The Court simply cannot find a convincing rationale to exclude evidence of the partial satisfaction of a tort victim's tort-related bills by a third-party *payor* but not to exclude evidence of the partial satisfaction of the very same bills by a third-party *payee*. In both cases, a tort victim has remedied his harm at a bargain rate yet stands to recover damages from the tortfeasor at full price.

995 F.Supp.2d 1164, 1171 (D. Nev. 2014) (emphasis in original).

The Court's ruling nevertheless does not prevent Defendant from introducing evidence that the reasonable value of medical services is not reflected by the billed amounts or that

chargemaster rates are generally inflated. For example, Defendant can question the records custodian witnesses about the practice of inflating medical invoices in the expectation that fees will be reduced. The collateral source rule does not restrict evidence concerning the reasonableness of expenses for medical services generally, but it does restrict the admission of evidence of the amount of write-downs Plaintiff, as the injured party, received as a benefit from a source separate from the tortfeasor.

**IT IS THEREFORE ORDERED** that

1. Plaintiff's First Motion in Limine to Exclude Post Hoc Medical Testimony (**ECF No. 165**) is **DENIED**;

2. Plaintiff's Second Motion in Limine to Exclude Pre-Accident Medical Records (**ECF No. 166**) is **DENIED**;

3. Plaintiff's Third Motion in Limine to Exclude Evidence of Previous Litigation (**ECF No. 167**) is **DENIED**; and

4. Plaintiff's Fourth Motion in Limine to Exclude Evidence of Collateral Source Payments (**ECF No. 169**) is **GRANTED**.

_____
**UNITED STATES DISTRICT JUDGE**