IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THERESA WILLIAMSON,

    Plaintiff,

v.                                                        CIV 15-0958 JHR/LF

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Metropolitan Property and Casualty Company's Motion for Attorneys' Fees and Costs for the Deposition of Plaintiff's Expert Dr. Thomas Grace and Motion Practice Related to the Substitution (*Doc. 196*), filed March 27, 2018. Having considered the parties' positions and all pertinent authority, the Court will grant the Motion and award fees and costs against Plaintiff's counsel.

### I)    **BACKGROUND**[1]

Plaintiff Theresa Williamson was rear-ended on April 27, 2012, by a third party. Plaintiff complained of spasms in her right arm and shoulder through her neck, denying that she had ever previously injured her shoulder and neck. After settling with the third party's insurance company for $43,000.00, she turned to her own insurer, Defendant Metropolitan Property and Casualty Company, claiming underinsured motorist benefits. As part of the claims process, Defendant required Plaintiff to undergo an Independent Medical Examination ("IME") with Dr. Douglas Slaughter.

---

[1] The facts of this case have been set forth in prior Memorandum Opinion and Orders issued by this Court. *See Docs. 141, 142, 144.* Unless otherwise stated, the facts presented here are taken from the Court's prior Opinion, dated June 14, 2017. *Doc. 142.*

1

The IME took place on October 18, 2013. Plaintiff reported to Dr. Slaughter that she began experiencing neck and low back pain the day after the collision and that she had no back and neck pain symptoms prior to it. After completing the IME, Dr. Slaughter opined that the collision exacerbated a pre-existing degenerative condition in Plaintiff's cervical and lumbar spine. Dr. Slaughter further opined "that this claimant could undergo further lumbar facet blocks and potential radiofrequency ablation to assist in the pain relief from her degeneration which reportedly she was asymptomatic from prior to the motor vehicle collision. This could also be a reasonable treatment in the cervical spine." Defendant subsequently paid Plaintiff $10,000.00 for medical payments pursuant to the MedPay benefits in its policy.

On July 14, 2015, Plaintiff's counsel sent Defendant a letter notifying it of the settlement of Plaintiff's third-party claim and offering to settle her first-party underinsured motorist claim for $207,000.00 (the remaining policy limits). Plaintiff based her offer, in part, on Dr. Slaughter's IME report, reasoning that Dr. Slaughter's recommended future medical treatment – cervical facet blocks and lumbar facet blocks – multiplied over Plaintiff's life expectancy, would exceed the underinsured motorist policy limits when coupled with Plaintiff's past medical treatment, which totaled $37,125.00. Defendant, however, excluded future medical costs from its calculation of Plaintiff's damages. Relying on the fact that it had paid $10,000.00 in MedPay benefits, and that Plaintiff had received $43,000.00 from the third party, Defendant offered $1,000.00 to settle Plaintiff's claim underinsured motorist claim. Plaintiff disputes the reasonableness of the offer and filed suit against Defendant for breach of its insurance duties.[2]

During discovery, Plaintiff averred that she had no preexisting conditions related to her cervical or lumbar spine. However, Defendant discovered past medical records indicating that

---

[2] Specifically, Plaintiff asserted claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, violation of New Mexico's Unfair Insurance Practices Act, and violation of the Unfair Practices Act.

2

Plaintiff had back pain and sciatica on and off for years before the collision. Defendant submitted this additional information to Dr. Slaughter, who authored an affidavit on January 19, 2016. In this affidavit, Dr. Slaughter explained that his original IME was based on information Plaintiff provided; that she reported she had no symptoms in her back or neck prior to the collision; and that his subsequent review of her prior medical records suggests that Plaintiff had a long history of prior back and neck symptoms, dating at least to 2004. Based upon his review of this additional information, Dr. Slaughter now believes that Plaintiff does not need any further treatment as a result of the collision.

Plaintiff hired an expert, Dr. Brian M. Shelley, to rebut Dr. Slaughter's affidavit. In his expert report, Dr. Shelley opined that there was no evidence that Plaintiff had continuous severe back pain and/or sciatica right before the collision; the records indicate that her baseline pattern was intermittent with the pain generally responsive to treatment. That pattern, Dr. Shelley stated, contrasts with the more severe and continuous back pain and right lower extremity symptoms after the collision for which more intensive treatment and pain management techniques were recommended.

Meanwhile, litigation proceeded. The Court held a Rule 16 Scheduling Conference on December 17, 2015, and issued a Scheduling Order the following day. *See Docs. 22* (Clerk's Minutes), *23* (Scheduling Order). Pursuant to that Order, Plaintiff's Rule 26(a)(2) expert disclosures were due by February 29, 2016. *Doc. 23* at 2. After several delays, the parties completed expert discovery in June 2016. *See Doc. 93* (Order on Discovery Motions) at 2. The parties filed and briefed several dispositive motions over the course of 2015-2016, which were ultimately resolved by June 2017. *See Docs. 141*, *142*. Thereafter, on August 22, 2017, then-presiding District Judge Herrera set this case for trial in February 2018. *See Doc. 143*. Pertinent

to the instant Motion, Judge Herrera's pretrial deadlines require the disclosure of expert reports in accordance with Rule 26(a)(2) of the Federal Rules of Civil Procedure (90 days prior to trial). *Doc. 143-1* at 2; Fed. R. Civ. P. 26(a)(2)(D).

Ultimately, Plaintiff filed an Emergency Motion to replace Dr. Shelley with Dr. Thomas Grace as her expert witness on November 15, 2017. *Doc. 145*. Plaintiff's Emergency Motion was premised on the fact that Dr. Shelley would no longer participate in this litigation based on "his personal animosity towards Plaintiff's counsel". *Id.* at 2. After briefing was complete, Judge Herrera held a hearing on Plaintiff's Emergency Motion on January 9, 2018. *See Doc. 156* (Clerk's Minutes). At the hearing, Plaintiff reiterated that Dr. Shelley "refuses to participate in any way with this litigation." *Doc. 172* (Transcript of Hearing) at 9. Ultimately, Judge Herrera reserved ruling on Plaintiff's Emergency Motion. *Doc. 156* at 1. She did so in order to determine the prejudice to Defendant in light of the fact that this case was set for trial behind a criminal matter. *Id.* at 2. She indicated that if this case were to go to trial as scheduled then Plaintiff's Emergency Motion would likely be denied; however, if the trial were continued, the same level of prejudice would not exist and the Emergency Motion would likely be granted. *Id.* Pertinent here, Judge Herrera noted that "there are other ways to address the expense incurred by [Defendant]." *Id.*; *see also Doc. 172* at 44.

Judge Herrera's criminal trial proceeded, and trial in this case was continued on February 5, 2018. *See Docs. 183*, *184*. On February 28, 2018, Judge Herrera entered her Memorandum Opinion and Order granting Plaintiff's Emergency Motion. *Doc. 194*. Because Plaintiff had already disclosed Dr. Grace's CV and expert report, Judge Herrera found that any prejudice to Defendant could be cured by deposing Dr. Grace. *Id.* at 2. Moreover, based on testimony at the hearing, Judge Herrera found no bad faith on Plaintiff's part, and was "reluctant to permit

4

Plaintiff herself to suffer repercussions of any lapse in judgment of her counsel, particularly where prejudice to Defendant is minimal and can be cured in ways less drastic than exclusion of Plaintiff's evidence." *Id.* Subsequently, Defendant filed the instant Motion, seeking its costs and attorney's fees incurred "in the course of securing Dr. Grace's deposition and in litigating Plaintiff's substitution of experts." *Doc. 196*. Soon thereafter, the case was reassigned to the undersigned to "conduct all proceedings in this case including trial, the entry of final judgment, and all post-trial proceedings." *Doc. 199*.

Defendant's Motion relies on Rules 16(f) and 37(c) of the Federal Rules of Civil Procedure. *See Doc. 196* at 1. It argues that sanctions are warranted under Rule 37(c)(1)(A) because Plaintiff's expert disclosure violated Rule 26(a)(2)(D)(i), which requires expert witness disclosures at least 90 days prior to trial. *Id.* at 6. Additionally, Defendant argues that sanctions are required under Rule 16(f) because Plaintiff's late expert disclosure violated the Court's Scheduling Order and caused it to incur unwarranted expenses in litigating Plaintiff's Emergency Motion and deposing Dr. Grace. *Id.* at 10. Defendant argues that Plaintiff's late substitution is not "substantially justified" so as to preclude sanctions under Rule 16(f) in this case because Plaintiff's "sexually harassing telephone language with Dr. Shelley's administrative assistant" is what caused him to refuse to testify on Plaintiff's behalf. *See id.* at 13-14.[3] As relief, Defendant "respectfully requests this Court to award costs and fees incurred in the litigation of Plaintiff's Emergency Motion, in preparing for and taking the deposition of Dr. Thomas Grace, and the

---

[3] In pursuing this argument, Defendant argues that Plaintiff's counsel's actions arguably violated Rule 16-404(A) of the New Mexico Rules of Professional Conduct. *See Doc. 196* at 14-15. While it is true that this Court's Local Rules provide that "[t]he Rules of Professional Conduct adopted by the Supreme Court of the State of New Mexico apply except as otherwise provided by local rule or by Court order[,] D.N.M.LR-Civ. 83.9, the Court reminds Defendant that "the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the rule." NM R RPC, Scope.

motion practice pertaining to Plaintiff's current and former expert, and for such other relief as this Court deems just and proper." *Id.* at 15-16.

Plaintiff responds with four arguments. *See Doc. 197*. First, Plaintiff argues that Defendant's incurred costs and attorney's fees are "self-inflicted wounds," because Defendant has since withdrawn Dr. Slaughter as a witness, thereby negating the need for Dr. Grace's rebuttal testimony. *Id.* at 4 ("Had Plaintiff known that Defendant was no longer calling Dr. Slaughter as a witness, Plaintiff would not have had to incur the enormous expense of retaining another orthopedic surgeon to refute the anticipated testimony of Dr. Slaughter."); *see also Doc. 214* (Pretrial Order). Second, Plaintiff argues that, now that Defendant is no longer calling Dr. Slaughter, Dr. Grace's testimony is now "minor, and therefore the burden on Defendant is inconsequential." *Doc. 197* at 5. Plaintiff attempts to demonstrate this point by pointing to a mere four questions she now intends to ask Dr. Grace at trial. *Id.* at 6-7. Third, Plaintiff argues that "Defendant insists on personally attacking Plaintiff's counsel without justification." *Id.* at 8. Plaintiff then attempts to explain that her counsel's statements to Dr. Shelley's administrative assistant were mere jokes, not warranting Defendant's accusations of sexual harassment. *Id.* at 8-9. Plaintiff explains that

> Contrary to this scornful accusation of sexual harassment, here is what Mr. Mescall said to Dr. Shelley's administrative assistant: (1) In the first conversation, Dr. Shelley's administrative assistant was telling Mr. Mescall about her upcoming vacation to a beach on a tropical island, and Mr. Mescall jokingly said, "Don't send me any photos." (2) In a subsequent conversation. Mr. Mescall casually asked, in a joking manner, "What are you wearing today?"
>
> At no time did Dr. Shelley's administrative assistant ever complain to Mr. Mescall about these remarks, but Dr. Shelley took great offense when he later learned about this.

*Id.* at 9. Plaintiff argues that this conduct does not "necessitate a punitive award of costs and attorneys' fees[.]" *Id.* Finally, Plaintiff argues, without citation to authority, that Defendant's Motion is "premature and should be decided after trial." *Id.* at 10.

Defendant's Reply argues that Plaintiff's Response concedes that Dr. Grace's trial testimony is necessary, regardless of its withdrawal of Dr. Slaughter as a witness. *Doc. 202* at 2. More to the point, Defendant argues that Plaintiff has failed to establish that her violation of Rule 16(f) and the Court's Scheduling Order was "substantially justified" so as to preclude sanctions thereunder. *Id.* at 4. Finally, Defendant argues, appropriately, that it matters not whether Plaintiff's counsel's comments were made in jest, what matters is how the comments were received by Dr. Shelley's assistant and their resultant effect on this litigation. *Id.* at 5.

**II)   LEGAL STANDARDS**

As noted, Defendant's Motion relies on two provisions of the Federal Rules of Civil Procedure. Under Rule 16(f)(1)(C), the Court may issue "any just orders" if a party or its attorney fails to obey a scheduling or other pretrial order. Fed. R. Civ. P. 16(f)(1)(C); *see Jordan F. Miller Corp. v. Mid-Continent Aircraft Service, Inc.*, 173 F.3d 863 (10th Cir. 1999) (unpublished) ("Rule 16(f) is implicated where there has been a violation of an existing pre-trial order."); *Lillie v. United States*, 40 F.3d 1105, 1110 (10th Cir. 1994) (holding that sanctions pursuant to Rule 16(f) require the violation of an existing court order). "Instead of or in addition to any other sanction, the court *must* order the party, its attorney, or both to pay the reasonable expenses – including attorney's fees – incurred because of any noncompliance with this rule, *unless the noncompliance was substantially justified or other circumstances make an award of expenses unjust*." Fed. R. Civ. P. 16(f)(2) (emphasis added). "The Court is more than merely authorized to award costs and fees; under the language of the rule, and absent a showing that

7

noncompliance was 'substantially justified,' the Court 'shall' require the party whose conduct necessitate the motion to pay the movant's fees." *Gulfstream Worldwide Realty, Inc. v. Philips Electronics North America Corp.*, CIV 06-1165 JB/DJS, 2007 WL 4707080 at *5 (D.N.M. 2007) (quoting Rule 16(f)). "The purpose of this provision is two-fold: (1) to insure efficient case management and disposition and (2) to compensate opposing parties for the inconvenience and expense resulting from an adversary's noncompliance with these objectives." *G.J.B. & Associates, Inc. v. Singleton*, 913 F.2d 824, 831 (10th Cir. 1990); *see also* Federal Civil Rules Handbook, 579 (2018) (describing the purposes of Rule 16(f) sanctions as punishment for improper conduct, deterrence of future conduct, "or to compensate the party injured by the improper conduct."). Ultimately, "the amount and impact of a monetary sanction should depend on the seriousness of the violation and where the fault lies, *i.e.*, with counsel or client." *Turnbull v. Wilcken*, 893 F.2d 256, 259 (10th Cir. 1990) (citations omitted).

Likewise, under Rule 37(c)(1)(A), the Court may order payment of reasonable attorney's fees and expenses related to the failure to identify a witness as required by Rule 26(a). *See* Fed. R. Civ. P. 37(c)(1)(A). However, Rule 37(c) permits sanctions only against parties, not counsel. *See Sun River Energy, Inc. v. Nelson*, 800 F.3d 1219, 1225 (10th Cir. 2015). Rule 26(a)(2)(D)(i) requires experts to be disclosed at least 90 days before trial. Fed. R. Civ. P. 26(a)(2)(D)(i). "The determination of whether a Rule 26(a) violation is justified or harmless is entrusted to the broad discretion of the district court." *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (quoted authority omitted). The Court should consider the following factors in determining the existence of substantial justification or harmlessness: "(1) the prejudice or surprise to the party against whom the testimony is offered; (2) the ability of the party to cure the prejudice; (3)

the extent to which introducing such testimony would disrupt the trial; and (4) the moving party's bad faith or willfulness." *Id.*

**III) ANALYSIS**

The Court begins first by deciding whom sanctions should be levied against, if they are indeed appropriate. Echoing Judge Herrera's rationale, this Court is hesitant to sanction Plaintiff for the indiscretions of her counsel. Moreover, after considering the harmlessness factors under Rule 37(c), the Court finds that: (1) the prejudice to Defendant is minimal; (2) Defendant was able to cure the prejudice; (3) the parties anticipated Dr. Grace's testimony at trial; and (4) Plaintiff herself has shown no bad faith or willfulness. As such, the Court will not employ Rule 37(c) to levy sanctions against Plaintiff in this case.

However, the same cannot be said of Plaintiff's violation of Rule 16(f). Indeed, the language of the rule makes clear that the court *must* levy sanctions against Plaintiff or her counsel unless violation of this Court's scheduling order and trial notice were substantially justified or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 16(f)(2). To begin, Plaintiff does not (and cannot) argue that her Emergency Motion complied with this Court's scheduling order and trial notice. As such, she has violated at least one court order, as required to establish a violation under Rule 16(f). The only question, therefore, is whether her violations were substantially justified or other circumstances make an award of expenses unjust. The Court cannot say that the violations were substantially justified. As Defendant argues, this is not a case where Plaintiff's expert had to withdraw due to an unforeseen conflict of interest, *see, e.g.*, *Gulfstream Worldwide Realty, Inc. v. Philips Electronics North America Corp.*, CIV 06-1165 JB/DJS, 2007 WL 4707080 at *5 (D.N.M. 2007); rather, Dr. Shelley withdrew due to Plaintiff's counsel's offensive comments to his administrative assistant. In these circumstances,

the Court finds that Defendant is entitled to its fees and costs related to Plaintiff's emergency substitution.

Finally, the Court rejects Plaintiff's arguments in her Response. While the Court is somewhat sympathetic to the notion that Dr. Grace's testimony is no longer necessary to rebut Dr. Slaughter's, Plaintiff has admitted that she still intends to call Dr. Grace at trial. As such, the Court finds that Defendant was entitled to depose him. More to the point, Plaintiff has failed to justify her violation of the Court's scheduling orders. Whether she believes them to be offensive or not, Plaintiff's counsel's comments were the catalyst behind Dr. Shelley's withdrawal in this case and the Court finds that Defendant was harmed by Plaintiff's eleventh-hour substitution. Last, Plaintiff has failed to demonstrate why the Court should hold Defendant's Motion in abeyance, as is her burden under the Federal and Local Rules. *See* Fed. R. Civ. P. 7(b)(1)(B); D.N.M.LR-Civ. 7.3(a).

## IV) CONCLUSION

For the foregoing reasons, the Court will grant Defendant's Motion for Attorneys' Fees and Costs for the Deposition of Plaintiff's Expert Dr. Thomas Grace and Motion Practice Related to the Substitution. *Doc. 196*. However, the Court will not require Plaintiff herself to pay these costs and fees. Instead, the sanctions will be levied against Plaintiff's counsel. Within 14 days of the entry of this order, Defendant shall file a Motion setting forth the fees and costs requested and justifying the same with meticulous and contemporaneous time records. Defendant should also consider submitting an affidavit establishing the reasonableness of the fees requested. Plaintiff may respond to Defendant's Motion and Defendant may file a reply as set forth in this Court's Local Rules. *See* D.N.M.LR-Civ. 7.4.

IT IS SO ORDERED.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent