IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

THERESA WILLIAMSON,

    Plaintiff,

v.                                                                                      CIV 15-0958 JHR/LF

METROPOLITAN PROPERTY AND
CASUALTY INSURANCE COMPANY,

    Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Defendant Metropolitan Property and Casualty Company's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Thomas G. Grace, M.D. (*Doc. 201*), filed April 19, 2018. Having considered the parties' positions and all pertinent authority, the Court will deny the Motion except as to Dr. Grace's opinion that the collision underlying this case caused Plaintiff's current symptoms.

### **I)**     **BACKGROUND[1]**

Plaintiff Theresa Williamson was rear-ended on April 27, 2012, by a third party. Plaintiff complained of spasms in her right arm and shoulder through her neck, denying that she had ever previously injured her shoulder and neck. After settling with the third party's insurance company for $43,000.00, she turned to her own insurer, Defendant Metropolitan Property and Casualty Company, claiming underinsured motorist benefits. As part of the claims process, Defendant required Plaintiff to undergo an Independent Medical Examination ("IME") with Dr. Douglas Slaughter.

---

[1] The facts of this case have been set forth in prior Memorandum Opinion and Orders issued by this Court. *See Docs. 141*, *142*, *144*. Unless otherwise stated, the facts presented here are taken from the Court's prior Opinion, dated June 14, 2017. *Doc. 142*.

1

The IME took place on October 18, 2013. Plaintiff reported to Dr. Slaughter that she began experiencing neck and low back pain the day after the collision and that she had no back and neck pain symptoms prior to it. After completing the IME, Dr. Slaughter opined that the collision exacerbated a pre-existing degenerative condition in Plaintiff's cervical and lumbar spine. Dr. Slaughter further opined "that this claimant could undergo further lumbar facet blocks and potential radiofrequency ablation to assist in the pain relief from her degeneration, which reportedly she was asymptomatic from prior to the motor vehicle collision. This could also be a reasonable treatment in the cervical spine." Defendant subsequently paid Plaintiff $10,000.00 for medical payments pursuant to the MedPay benefits in its policy.

On July 14, 2015, Plaintiff's counsel sent Defendant a letter notifying it of the settlement of Plaintiff's third-party claim and offering to settle her first-party underinsured motorist claim for $207,000.00 (the remaining policy limits). Plaintiff based her offer, in part, on Dr. Slaughter's IME report, reasoning that Dr. Slaughter's recommended future medical treatment – cervical facet blocks and lumbar facet blocks – multiplied over Plaintiff's life expectancy, would exceed the underinsured motorist policy limits when coupled with Plaintiff's past medical treatment, which totaled $37,125.00. Defendant, however, excluded future medical costs from its calculation of Plaintiff's damages. Relying on the fact that it had paid $10,000.00 in MedPay benefits, and that Plaintiff had received $43,000.00 from the third party, Defendant offered $1,000.00 to settle Plaintiff's claim underinsured motorist claim. Plaintiff disputes the reasonableness of the offer and filed suit against Defendant for breach of its insurance duties.[2]

During discovery, Plaintiff averred that she had no preexisting conditions related to her cervical or lumbar spine. However, Defendant discovered past medical records indicating that

---

[2] Specifically, Plaintiff asserted claims for breach of contract, breach of fiduciary duty, breach of the covenant of good faith and fair dealing, violation of New Mexico's Unfair Insurance Practices Act, and violation of the Unfair Practices Act.

Plaintiff had back pain and sciatica on and off for years before the collision. Defendant submitted this additional information to Dr. Slaughter, who authored an affidavit on January 19, 2016. In this affidavit, Dr. Slaughter explained that his original IME was based on information Plaintiff provided; that she reported she had no symptoms in her back or neck prior to the collision; and that his subsequent review of her prior medical records suggests that Plaintiff had a long history of prior back and neck symptoms, dating at least to 2004. Based upon his review of this additional information, Dr. Slaughter now believes that Plaintiff does not need any further treatment as a result of the collision.

Plaintiff hired an expert, Dr. Brian M. Shelley, to rebut Dr. Slaughter's affidavit. In his expert report, Dr. Shelley opined that there was no evidence that Plaintiff had continuous severe back pain and/or sciatica right before the collision; the records indicate that her baseline pattern was intermittent with the pain generally responsive to treatment. That pattern, Dr. Shelley stated, contrasts with the more severe and continuous back pain and right lower extremity symptoms after the collision for which more intensive treatment and pain management techniques were recommended.

Defendant moved *in limine* to exclude Dr. Shelley's testimony. *See Doc. 112*. The Court, District Judge Herrera presiding, granted Defendant's Motion in part on September 28, 2017. *See Doc. 144*. Pertinent here, Defendant did not challenge Dr. Shelley's qualifications. *Id.* at 12. Instead, Defendant argued that Dr. Shelley's opinion was not reliable because he had not reviewed hundreds of pages of Plaintiff's medical records and other relevant information. *Id.* at 13. The Court found that Plaintiff had met her burden of showing that Dr. Shelley has specialized medical knowledge, that he based his opinion on sufficient facts and data, and that he had reliably applied the facts contained in Plaintiff's medical records to arrive at his opinion that

Plaintiff had an aggravation of her low back pain due to the collision. *Id.* at 14. As such, the Court concluded that "Dr. Shelley's opinion would be helpful to the jury in assessing whether Metropolitan acted reasonably in its consideration of Dr. Slaughter's findings in the IME Report in making its settlement offer. Consequently the Court [found] that Plaintiff ha[d] met the threshold burden of reliability to permit Dr. Shelley to testify whether Dr. Slaughter's opinions and statements set forth in his IME Report and his Affidavit, respectively, are supported by the records upon which Dr. Slaughter relied to make them." *Id.* To the extent that Dr. Shelley did not review all of Plaintiff's post-collision records and lacked other foundational information, the Court held that "[s]uch facts provide fertile grounds for cross-examination at trial, but go to the weight, not the admissibility, of Dr. Shelley's testimony." *Id.* at 15. However, based partly on Plaintiff's concessions, the Court excluded Dr. Shelley's testimony concerning the causal connection between the collision and Plaintiff's current symptoms. *Id.* at 14-15.

For reasons not pertinent here, the Court granted Plaintiff's Motion to substitute Dr. Thomas Grace for Dr. Shelley on February 28, 2018. *Doc. 194*. Defendant subsequently withdrew Dr. Slaughter as a witness. *Docs. 161* (Defendant's Witness List); *214* (Pretrial Order). Then, Defendant filed the instant Motion, seeking to exclude Dr. Grace's testimony from trial on three primary grounds: (1) "Dr. Grace's perceptions regarding Dr. Slaughter's IME and subsequent Affidavit do not require any scientific, technical, or other specialized knowledge that will assist the jury"; (2) "Dr. Grace's opinion that the accident caused an aggravation of a pre-existing degenerative spinal condition is not based on sufficient data to be reliable"; and, (3) Dr. Grace's testimony will unfairly prejudice Defendant and will confuse and mislead the jury. *See Doc. 201* at 7, 9, 11 (capitalization omitted). Defendant concludes that "[n]one of the opinions Dr. Grace provided in his report or deposition testimony would assist the jury in understanding

the evidence or any fact at issue in this case." *Id.* at 13. As such, Defendant moves the Court to prohibit Dr. Grace from offering *any* opinion testimony at trial in this matter. *Id.* at 14; *see Doc. 210* (Reply).

Plaintiff's response takes a much narrower view of Dr. Grace's testimony, arguing that Defendant has created a "false issue." *Doc. 207* at 1. Quoting from her Motion to replace Dr. Shelley with Dr. Grace, Plaintiff points out that Dr. Grace was meant to merely repeat what was stated by Dr. Shelley and would "also explain to the jury what Defendant's physician stated in his IME report; in other words, Plaintiff's expert will explain all the medical language." *Id.* at 2 (quoting *Doc. 145* at 4). Plaintiff argues that despite this description of Dr. Grace's intended testimony, Defendant insisted on asking Dr. Grace to opine as to causation in his deposition. *Id.* Moreover, Plaintiff notes that Defendant is not challenging Dr. Grace's medical expertise. *Id.* However, taking one step further to demonstrate the harmlessness of Dr. Grace's testimony, Plaintiff summarizes the approximately 16 questions she intends to ask Dr. Grace at trial. *See id.* at 3-6. Most basically, these questions ask Dr. Grace to define medical terminology, offer his opinion as to whether he thought Plaintiff's beliefs were reasonable, and validate Plaintiff's decision to lie to her personal physician about the cause of her pain. *Id.* In other words, Plaintiff does not intend to have Dr. Grace testify as to causation, except to the extent that he is opining that Dr. Slaughter revised or recanted his IME findings. *See id.*; *see also Doc. 151-2* (Dr. Grace's Report).

Defendant's Reply accuses Plaintiff of creating a moving target, arguing that Plaintiff "once again changes the scope of Dr. Grace's proffered testimony." *Doc. 210* at 1. Defendant argues that, as such, Plaintiff fails to show how Dr. Grace's testimony will assist the jury, requires specialized knowledge or training, "or has any foundation to support an opinion

5

regarding whether the accident at issue caused an aggravation of a pre-existing condition to Plaintiff." *Id.* Defendant further argues that Dr. Shelley never offered testimony or statements in his expert report regarding the medical terminology contained in the IME or on Plaintiff's decision to lie to her person physician. *Id.* at 3. Defendant concludes that "[b]ecause Plaintiff now appears to concede Dr. Grace will not testify regarding causation or his perceived discrepancies between Dr. Slaughter's IME report and affidavit, this Court should exclude Dr. Grace entirely." *Id.*

## II) **LEGAL STANDARDS**

Federal Rule of Evidence 402 proclaims that "relevant" evidence is admissible, subject to certain exceptions. Fed. R. Evid. 402. Under Federal Rule of Evidence 401, evidence is "relevant" if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. The Court may only exclude relevant evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Federal Rule of Evidence 702 governs the admissibility of expert opinion testimony, providing that:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

6

Fed. R. Evid. 702. Rule 702 incorporates the principles of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), to ensure that proffered expert testimony, even non-scientific and experience-based expert testimony, is both relevant and reliable. Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments.

*Kumho* made clear that Rule 702 and *Daubert* govern all expert opinion testimony, not just that which is based on scientific principles. 526 U.S. at 148. Under *Daubert*, this Court should generally focus on the expert's methodology rather than the conclusions he generates. *Daubert*, 509 U.S. at 595. Thus, the Supreme Court articulated a list of factors that weigh into a district court's reliability determination: (i) whether the method has been tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of standards and whether the witness applied them in the present case; and, (v) whether the witness' method is generally accepted as reliable in the relevant professional or technical community. *Id.* at 594-95. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony depending upon "the particular circumstances of the particular case at issue." 526 U.S. at 150. However, these factors are neither exclusive nor dispositive. *Id.* at 151. "Regardless of the specific factors at issue, the purpose of the *Daubert* inquiry is always 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222–23 (10th Cir. 2003) (quoting *Kumho*, 526 U.S. at 152).

The Court has significant discretion in how to exercise its gatekeeping role. *Id.* at 1228. While a *Daubert* hearing is sometimes required, it is not where the Court has "sufficient evidence to perform the task." *Id.* (quoted authority omitted).

**III) <u>ANALYSIS</u>**

To begin, the Court will permit Dr. Grace to define and explain the medical terminology in Dr. Slaughter's report. In some cases, expert testimony is appropriate to educate the jury as to general principles without ever attempting to apply these principles to the specific facts of the case. *See* Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments. As Judge Browning has stated, "[e]xpert witnesses are routinely permitted to testify about the definition of terminology used in specific fields." *United States v. Rodella*, CR 14-2783 JB, 2014 WL 6634310 at *33 (D.N.M. 2014) (collecting cases); *see, e.g.*, *United States v. Kamahele*, 748 F.3d 984, 998 (10th Cir. 2014) (permitting an expert to define and explain gang terminology). "For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony 'fit' the facts of the case." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments.

Defendant does not challenge Dr. Grace's qualifications. As such, the Court must simply consider whether his testimony as to the medical terms contained in Dr. Slaughter's IME Report and affidavit will be helpful to the jury in the context of this case. *See United States v. McDonald*, 933 F.2d 1519, 1522 (10th Cir. 1991) ("Rule 702 thus dictates a common-sense inquiry of whether a juror would be able to understand the evidence without specialized knowledge concerning the subject."). Having reviewed the documents at issue, the Court finds that it will. As such, it will not completely exclude Dr. Grace from testifying at trial.

**A) Dr. Grace will not be permitted to opine as to causation between Plaintiff's current symptoms and the subject collision; however, he will be permitted to discuss discrepancies between Dr. Slaughter's IME report and subsequent affidavit, including his original opinion that Plaintiff aggravated her pre-existing condition(s).**

In her Response, Plaintiff agrees that Dr. Grace does not have sufficient facts or data from which to form an independent expert opinion regarding whether the accident at issue caused her alleged injuries or an aggravation of her pre-existing condition. *See Doc. 207* at 1. Plaintiff posits that this is not the reason Dr. Grace was hired; rather, Plaintiff hired Dr. Grace to "explain to the jury what Defendant's physician stated in his IME report; in other words, Plaintiff's expert will explain all the medical language." *Id.* at 4.

Clearly, Dr. Grace was hired to do more than merely explain the medical language in Dr. Slaughter's IME report and affidavit. Dr. Grace, like Dr. Shelley, was hired to counter Dr. Slaughter's statements in his affidavit. To wit, Dr. Grace's expert report concludes that, in his opinion, "Dr. Slaughter's Affidavit of 01/19/2016 is an attempt to recant portions of his previous independent medical evaluation performed in October of 2013." *Doc. 151-2* at 3.

Defendant argues that Dr. Grace went a step further in his expert report and deposition, testifying that "based on Dr. Slaughter's IME report, Plaintiff suffered an aggravation of a pre-existing condition from the accident at issue." *See Doc. 201* at 9. Defendant argues that Dr. Grace's opinion as to causation is not based on sufficient facts – being that it is based primarily upon Dr. Slaughter's IME report. *See id.* at 10-11. In support of its position, Defendant cites the advisory committee notes to Rule 702, contending that, in the Tenth Circuit, "assessment of the sufficiency of factual information relied upon by the expert is quantitative, not qualitative." *Id.* at 10 (citing *United States v. Lauder*, 409 F.3d 1254, 1264 n.5 (10th Cir. 2005)). The Court agrees with this statement of the law. *See* Fed. R. Evid. 702, Advisory Committee Notes to the 2000

Amendments. However, the full language of the 2000 Advisory Committee Notes contemplates Dr. Grace's reliance on Dr. Slaughter's opinion, even in reaching his own conclusions: "Rule 702 calls for a quantitative rather than qualitative analysis. The amendment requires that expert testimony be based on sufficient underlying 'facts or data.' *The term 'data' is intended to encompass the reliable opinions of other experts*." Fed. R. Evid. 702, Advisory Committee Notes to the 2000 Amendments (emphasis added).

In other words, there is nothing improper about Dr. Grace relying on Dr. Slaughter's IME report in forming his own opinions in this case, so long as his methodology was sufficiently reliable. Yet Defendant does not challenge Dr. Grace's methodology, nor could it. In this case, Dr. Grace was not asked to render an opinion as to causation. Rather, he was retained to respond to *Dr. Slaughter's* opinion and subsequent recantation. That is precisely what he did. While Defendant complains that Dr. Grace does not have sufficient facts or data before him to render an opinion on these issues, the Court finds that he does. *See Rivera v. Volvo Cars of N. Am., LLC*, 2015 WL 11118065, at *4 (D.N.M. May 28, 2015) ("An expert opinion must be based on facts that enable the expert 'to express a reasonably accurate conclusion as opposed to conjecture or speculation but absolute certainty is not required.'") (quoting *Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996)). Like Judge Herrera found in ruling on Defendant's Motion to exclude Dr. Shelley, the absence of supportive facts provides fodder for cross-examination, but ultimately go to the weight, rather than the admissibility, of Dr. Grace's opinions.

Therefore, the Court will deny Defendant's Motion to the extent that it seeks to preclude Dr. Grace from testifying that, based on Dr. Slaughter's IME, Plaintiff suffered an aggravation. However, based on Plaintiff's concession, the Court will not permit Dr. Grace to testify concerning a causal connection between the accident and Plaintiff's current symptoms. *See*

*Faure v. Las Cruces Med. Ctr., LLC*, 2017 WL 3706369, at *2 (D.N.M. Aug. 22, 2017) ("The proponent of the expert bears the burden of satisfying Rule 702 and establishing the admissibility of the testimony[.]").

### B) The evidence is not outweighed by the prejudice contemplated by Rule 403.

Finally, Defendant argues that Dr. Grace's testimony will mislead or confuse the jury, and, therefore, should be excluded under Rule 403. Specifically, Defendant posits that "[a]llowing Dr. Grace to testify as to what Dr. Slaughter's IME report and affidavit state, something the jury is capable of doing, will be misleading and confusing to the jury. . . [because] [i]t will invite the jury to substitute the 'expert' opinion regarding the contents of those documents for its own evaluation and determination." *Doc. 201* at 12. The Court is not persuaded.

"The Court should liberally admit expert testimony and has broad discretion in deciding whether to admit or exclude expert testimony." *Faure v. Las Cruces Med. Ctr.*, LLC, 2017 WL 3706369, at *3 (D.N.M. Aug. 22, 2017) (citations omitted). The "exclusion of evidence under Rule 403 that is otherwise admissible under the other rules is an extraordinary remedy and should be used sparingly." *United States v. Smalls*, 605 F.3d 765, 787 (10th Cir. 2010). "In performing the 403 balancing, the court should give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value." *Deters v. Equifax Credit Info. Servs., Inc.*, 202 F.3d 1262, 1274 (10th Cir. 2000). "Evidence is not unfairly prejudicial simply because it is damaging to an opponent's case." *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoted authority omitted). Rather, "[t]o be *unfairly* prejudicial, the evidence must have 'an undue tendency to suggest decision on an improper basis, commonly, though not

necessarily, an emotional one.'" *United States v. Caraway*, 534 F.3d 1290, 1301 (10th Cir. 2008) (quoting Fed. R. Evid. 403, advisory committee notes) (emphasis in original).

Defendant has not shown that it will be unfairly prejudiced by Dr. Grace's expert testimony in this case. The Court agrees that the issue is complicated, and that the line between Dr. Grace's permissible opinion testimony and that implying causation for Plaintiff's current symptoms is a fine one. However, the Court errs in favor of admitting Dr. Grace's expert testimony. The probative value of Dr. Grace's testimony is high given the parties' dispute as to whether Defendant's offer to settle Plaintiff's claim was reasonable, especially now that Dr. Slaughter has been withdrawn as a witness. This probative value outweighs any potential confusion the jury may suffer. Moreover, a carefully crafted jury instruction should assuage Defendant's concerns about the jury misusing Dr. Grace's testimony. *See* Fed. R. Evid. 105.

## IV) CONCLUSION

The purpose of the Federal Rules of Evidence is to ascertain the truth and secure a just determination in every proceeding. Fed. R. Evid. 102. Here, Defendant seeks to exclude Dr. Grace's testimony in its entirety. However, Defendant does not challenge the relevance or reliability of Dr. Grace's opinions, instead challenging them on the grounds that Dr. Grace has not reviewed sufficient facts or data and that his testimony will not be helpful to the jury. However, now that Defendant has withdrawn Dr. Slaughter as a trial witness, it is imperative that the jury be informed as to the medical terminology underlying his IME report and affidavit. Moreover, Dr. Grace will permissibly explain the differences in the two documents, and explain his opinion – that Dr. Slaughter recanted his own IME findings after reviewing Plaintiff's medical records.

"The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is 'generally accepted' in the scientific community… Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts that satisfy Rule 702's reliability requirements." *Goebel v. Denver and Rio Grande Western R. Co.*, 346 F.3d 987, 991 (10th Cir. 2003) (quoted authority omitted). Defendant has failed to show that Dr. Grace's proffered expert testimony is the product of unreliable methods, and any deficiencies it has identified in his testimony are best reserved for cross-examination.

Wherefore, Defendant's Motion in Limine to Exclude the Testimony of Plaintiff's Expert Thomas G. Grace, M.D. (*Doc. 201*), is hereby granted in part and denied in part. The Court will allow Dr. Grace's testimony as to the medical terminology at issue in Dr. Slaughter's IME report or affidavit, or his opinion that Plaintiff suffered an aggravation of her pre-existing medical condition. However, Dr. Grace will be precluded from testifying that the collision caused Plaintiff's current symptoms.

SO ORDERED.

_____
Jerry H. Ritter
U.S. Magistrate Judge
Presiding by Consent